## Commonwealth v. Pittsburgh-Erie Saw Corp.

*Benjamin B. Bastian*, Deputy Attorney General, and *James H. Duff*, Attorney General, for Commonwealth.

*Roy J. Keefer*, of *Hull, Leiby & Metzger*, and *Reed, Smith, Shaw & McClay*, for defendant.

RICHARDS, P. J., O. C., specially presiding, March 13, 1944.—This is an appeal from the settlement of the franchise tax of defendant for the calendar year 1937, amounting to $3,353.36. The case was tried by the court without a jury, pursuant to a stipulation filed. By agreement of the parties, the issues have been narrowed to one, namely the gross receipts assignable to Pennsylvania for the year in question.

### Facts

Defendant is a Delaware corporation registered to do business in Pennsylvania. Its certificate of authority covered "manufacturing, leasing and dealing in butchers' supplies and specialties". It maintained an office at Pittsburgh and offices in three other States. It furnished saw frames and blades, grinding plates, and knives to butchers.

Defendant had three methods of placing its equipment with butchers: (1) By mail; (2) through butcher supply firms; and (3) through its own representatives. Defendant advertised its business. When an interested party wrote to the Pittsburgh office, that office filled any resulting order by mail. Certain butcher supply firms also furnished the equipment to butchers, being paid for their services by a commission. The repre-

sentatives of the company also made direct contacts with butchers.

The advertising of the company, the order blanks used, and the contracts entered into always stated that the equipment was not sold. Rather it was referred to as being loaned or rented. The circulars of the company, used for advertising purposes, and perhaps other representations made by it, used the term "service" as descriptive of its business. The compensation received by the company was called rent or rental. The contracts provided what equipment was to be furnished, for what length of time, and for what compensation. Any saw blades or grinding knives which became dull while the contract was in force were to be replaced with sharp blades or sharp knives.

The company received from butchers in other States, during the year 1937, for the use of its equipment, the sum of $272,010. The Commonwealth contends that these receipts are attributable to Pennsylvania for the purpose of computing the franchise tax of defendant. The company contends that they are not.

## Discussion

In computing the franchise tax of a foreign corporation three allocation fractions are used. The third of these fractions is known as the gross receipts fraction. The numerator of this fraction consists of gross receipts assignable to Pennsylvania, and the denominator is the total gross receipts. In the present case, the numerator alone is involved. The Act of April 8, 1937, P. L. 239, provides:

"The amount of the taxpayer's gross receipts from business assignable to this Commonwealth shall be the amount of its gross receipts for the taxable year from, (1) sales, fees, and commissions, except those negotiated or effected in behalf of the taxpayer by agents or agencies chiefly situated at, connected with, or sent out from premises for the transaction of business owned or rented by the taxpayer outside the Commonwealth,

. . . (2) rentals or royalties from property situated or from the use of patents within this Commonwealth . . ."

It will be noted that the words "fees and commissions" were not present in the Act of May 16, 1935, P. L. 184, sec. 21, but were added by the amendment of 1937, supra. On the other hand, "rental" was included in the Act of 1935 as it was in the Act of 1937.

The Commonwealth contends that the receipts in controversy result from charges made for a service. In the popular sense, this may be true. In the legal sense, we think it is not true.

Considering first "sales, fees and commissions", we direct attention to the fact that the Commonwealth does not contend that the receipts in question result from sales or commissions. Clearly, there could be no sale of equipment when no title passes. Neither could the receipts be considered as commissions earned for selling the goods of another or for transacting business for another. Defendant transacted its own business, not that of another. This leaves only fees to consider.

That a fee is not rental is clear. The word rental occurs in both the Acts of 1935 and 1937. If fees and rental were synonymous terms, it would not have been necessary to amend the Act of 1935 to insert the word "fees". The word fee, as descriptive of compensation other than in public offices, denotes compensation for personal services and not for the use of property. Webster's New International Dictionary (2d ed., unabridged), known as a Merriam Webster, defines a fee as "compensation, often a fixed charge, for professional service or for special and requested exercise of talent or skill, as by an artist; as, a fee for consultation; a retaining fee". We see nothing in the transactions here involved which would justify calling the charges made a fee. It is not a charge for professional services or anything of that character. On the other hand, a charge for the use of property could not properly be

denominated a fee. The mere fact that defendant referred to its business as a "saw service" or "grinder service" proves nothing. We must look to the substance of the transactions in order to determine their legal character. We conclude that the receipts involved are not "sales, fees or commissions" within the meaning of the act.

Turning now to consideration of rentals, we find no difficult problem. Before rentals may be included in gross receipts attributable to Pennsylvania, it must appear that the rentals were for the use of property within this State. Since the Commonwealth has assigned the tangible property producing the disputed receipts to other States, it can scarcely contend that such property is located in Pennsylvania. Hence, if the receipts are rentals, they are not assignable to Pennsylvania. If the receipts are not rentals, the Commonwealth is bound to show under what provision of the act they are assignable to Pennsylvania. This it has failed to do.

No matter what particular terminology be employed to describe the transactions of defendant, the fact remains that the customer always has in his possession property of defendant. Whether the blades and knives be sharp or dull does not alter this fact. Our duty is to determine the proper assignment of the gross receipts under the statute. Since we have determined that there is nothing in the statute or in its application to the facts which assigns the disputed gross receipts to Pennsylvania, it follows that they were improperly included in the numerator of the gross receipts fraction.

The Commonwealth has not filed any requests for findings of fact or conclusions of law. We affirm all defendant's requests for findings of fact. We decline to act upon defendant's requests nos. 1, 15, 16, 17, and 18 for conclusions of law, as we consider them unnecessary in view of our determination. We do, however, affirm all defendant's other requests for conclusions of law. We also enter the following

*Conclusions of law*

1. Receipts in the amount of $272,010 were received as rentals for property outside of Pennsylvania.

2. These receipts of $272,010 were not from sales, fees, or commissions.

3. These receipts of $272,010 are not assignable to Pennsylvania, and hence should be excluded from the numerator of the gross receipts fraction.

4. The liability of defendant for the 1937 franchise tax is computed as follows:

$$\frac{117,531}{480,469} = .244,617$$

$$\frac{143,094}{289,754} = .493,846$$

$$\frac{51,851}{857,038} = .060,500$$

$$.798,963 \div 3$$

Allocating figure . . . . . . . . .266,321

.266,321 × $1,700,000 = Taxable value . . . $452,745.70

Tax at 5 mill . . . . . . 2,263.73

Interest on $769.42 (being $2,263.73, the amount of tax due, less $1,494.31, the amount of tax paid) at 6% from 3/15/38 to 5/1/40 . . . . . . . . . . . . . . . . . . . . . . . . 98.12

Total due . . . . . . . . . . . . . . . . $2,361.85

Payment of tax and interest made by defendant . . . . . . . . . . . . . . . . . . . . . . . . . 3,590.37

Credit due defendant . . . . . . . . . $1,228.52

*Decree nisi*

And now, to wit, March 13, 1944, the appeal is sustained, judgment is hereby directed to be entered in

favor of defendant and against the Commonwealth for $1,228.52, unless exceptions hereto be entered within the time limited by law.

The prothonotary is directed to notify the parties or their counsel of this decree forthwith.